UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EMILIO MIRELES, Plaintiff,

v. Civil Action No. 3:24-cv-410-DJH-RSE

CORNERSTONE HEALTHCARE GROUP MANAGEMENT SERVICES LLC, Defendant.

* * * * *

# MEMORANDUM AND ORDER

Plaintiff Emilio Mireles filed this purported class action against Defendant Cornerstone Healthcare Group Management Services LLC, seeking to represent a class of individuals whose private information was compromised by a data breach at Cornerstone and alleging negligence, negligence per se, breach of implied contract, breach of fiduciary duty, and unjust enrichment. (Docket No. 1, PageID.1, 5 ¶¶ 2, 20) In March 2025, the parties "reached a settlement in principle." (D.N. 38, PageID.132) Mireles moves for preliminary approval of their proposed class-action settlement. (D.N. 50) Cornerstone does not oppose the motion. The Court held a preliminary fairness hearing on November 5, 2025, and took the matter under advisement. After careful consideration, the Court will grant Mireles's motion for the reasons set out below.

## I.

The following information is set out in the parties' proposed settlement agreement and its associated exhibits. (*See generally* D.N. 50) The parties propose the following settlement class: "All persons whose Private Information was compromised as a result of the Data Breach discovered by Cornerstone Healthcare Group Management Services LLC in December 2023 and to whom it provided notice." (D.N. 50-1, PageID.154) The parties estimate that there are 483,000 members who fall into this class. (D.N. 50-2, PageID.183 ¶ 54) The proposed class also "includes

a Social Security Number Subclass" (the "SSN subclass") of approximately 74,959 members, which "includes all Settlement Class Members whose Social Security numbers were compromised during the Data Incident." (D.N. 50-1, PageID.155; D.N. 50-2, PageID.184 ¶ 61)

Under the terms of the proposed settlement, Cornerstone will contribute $2,350,000 to a settlement fund. (D.N. 50-2, PageID.184–85 ¶¶ 57, 65) The "Net Settlement Fund" used to pay claims will be the money remaining after the "cost of Notice and Administrative Expenses, Settlement Payment(s), Court-approved Fee Award and Expenses, [a] Court-approved Service Award[] for [the] Class Representative[], and certain Settlement Fund taxes and costs" are deducted.[1] (*Id.*, PageID.185 ¶ 65) The settlement agreement provides for an "award of attorneys' fees totaling no more than 35% of the Settlement Fund." (*Id.*, PageID.197 ¶ 99) Additionally, class counsel may seek "reimbursement of reasonable litigation expenses not to exceed $25,000." (*Id.*) Class counsel also intend to "request . . . a Service Award payment for the Class Representative[] in recognition for [his] contributions to this Litigation not to exceed $3,000.00." (*Id.* ¶ 97)

Under the proposed settlement, members of the SSN subclass may claim "two years of three-bureau credit monitoring and identity restoration services, to include $1 million in identity fraud insurance, as well as either reimbursement of documented losses up to $10,000 or a pro rata cash payment."[2] (D.N. 50-1, PageID.155; D.N. 50-2, PageID.187 ¶ 72(A)) Members who do not

---

[1] "The Parties have agreed to use Eisner Advisory Group, LLC, as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision." (D.N. 50-1 (citing D.N. 50-2 ¶ 53))

[2] When a class member submits a claim for an extraordinary loss,

> [t]he Claim Form and supporting documentation must demonstrate that: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was fairly traceable to the Data Incident; (iii) the loss occurred between December 1, 2023 and the Claims Deadline; (iv) the loss is not already covered by one or more of the Documented Ordinary Loss reimbursement categories; and (v) the Claimant made

belong to the SSN subclass may claim "reimbursement of documented losses up to $2,500 or a pro rata cash payment." (D.N. 50-1, PageID.155; D.N. 50-2, PageID.187 ¶ 72) Pro rata cash payments to members of the SSN subclass will be three times those to other class members. (D.N. 50-1, PageID.155; D.N. 50-2, PageID.187 ¶ 72(B)(ii)) If administrative costs, attorney fees, and service awards deplete the settlement fund such that it cannot satisfy all claims, the claims will be reduced pro rata. (D.N. 50-1, PageID.155; D.N. 50-2, PageID.187 ¶ 69) The Settlement Administrator will disburse net settlement funds "via mailed check and/or electronic payment." (D.N. 50-2, PageID.184 ¶ 58)

The proposed settlement also includes a release of claims. Specifically, Settlement Class Members will release

> any and all claims . . . based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the complaints filed in the Litigation, defense of the Litigation, the Settlement Agreement, or the Settlement claims process[.]

(*Id.*, PageID.195 ¶ 92) The release expressly excludes claims "to enforce the terms of the settlement contained in th[e] Settlement Agreement." (*Id.*, PageID.196 ¶ 92)

The settlement agreement provides that class members will receive notice of the proposed settlement via U.S. mail and email, if Cornerstone has an email address for them, within thirty days of entry of the Preliminary Approval Order.[3] (*Id.*, PageID.190–91 ¶ 79) Class members will

---

> reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance.

(D.N. 50-2, PageID.211, 219) Additionally, "[a]t the discretion of the Settlement Administrator, any claim greater than $5,000 may be escalated to the counsel of the Parties for further review and good faith resolution." (*Id.*, PageID.187 ¶ 71)

[3] The proposed settlement also provides for a settlement website where class members can view documents related to the case. (D.N. 50-2, PageID.184,192 ¶¶ 59, 83(f)) In addition, it authorizes the Administrator to create a toll-free telephone line for questions related to the settlement. (*Id.*, PageID.192 ¶ 83(g))

have sixty days from the notice deadline to opt out of the settlement or object (*id.*, PageID.182 ¶¶ 38–39) and ninety days after the notice deadline to submit claims. (*Id.*, PageID.179 ¶ 15)

**II.**

"The claims of a 'class proposed to be certified for purposes of settlement' may be settled 'only with the court's approval.'" *Branson v. Alliance Coal, LLC*, No. 4:19-CV-155-RGJ-HBB, 2025 WL 1908971, at *3 (W.D. Ky. July 10, 2025) (quoting Fed. R. Civ. P. 23(e)). Under Rule 23(e), "class action settlement approval involves a three-step process: (1) preliminary approval of the proposed settlement, (2) notice of the settlement to all affected class members, and (3) a final approval hearing." *Branson*, 2025 WL 1908971, at *3 (internal quotations omitted). Final approval is warranted only when the Court finds that the proposed class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To preliminarily approve a settlement and direct notice, the Court must determine that it "will likely be able to" grant final approval and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In deciding whether to grant preliminary approval, the Court considers two sets of substantially overlapping factors. *See Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019). The first set of factors, set out in Rule 23, requires the Court to consider whether

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also examines several factors articulated by the Sixth Circuit, including

> (1) the risk of fraud or collusion; (2) the complexity, expense[,] and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Macy*, 2019 WL 6684522, at *2 (quoting *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016)); *see also Feezle v. Norfolk S. Ry. Co. (In re E. Palestine Train Derailment)*, 158 F.4th 704, 713 (6th Cir. 2025).

**A. Adequate Representation**

The Court first considers whether "the class representative[] and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This factor weighs in favor of a proposed settlement where the class representative and counsel "extensively litigated th[e] matter through settlement" and "engaged in a significant amount of discovery." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *3 (W.D. Ky. Apr. 27, 2022) (finding adequate representation where "[t]here [wa]s no reason to think that, if the case continued to trial, the parties would stop litigating the case with the same intensity"); *see also Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *2 (W.D. Ky. Mar. 17, 2023). And "[c]ourts presume [that] a settlement resulting from 'extensive negotiations by experienced counsel' is fair." *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2025 WL 899854, at *3 (W.D. Ky. Mar. 25, 2025) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)).

Here, nothing in the record indicates that Mireles and class counsel have failed to adequately represent the proposed class. Class counsel Leigh Montgomery represents that class

counsel "conferred on several occasions [with the opposing party] to discuss the merits of the claims," that they "prepared informal discovery requests which facilitated . . . settlement negotiations," and that the settlement was reached only after "vigorous advocacy." (D.N. 50-3, PageID.242 ¶¶ 4–5) Moreover, class counsel have substantial prior experience in class-action litigation, including data-breach matters. (*Id.*, PageID.246, 248–50 ¶¶ 21–23, 26–31) In sum, this factor weighs in favor of preliminary approval. *See Green*, 2022 WL 1240432, at *3; *see also Carter*, 2025 WL 899854, at *3.

**B. Arm's-Length Negotiation**

Next, the Court asks whether the "proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2). As explained in the advisory committee notes to Rule 23, "the involvement of a neutral or court-affiliated mediator or facilitator in . . . negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment. And as noted above, when a proposed settlement "result[ed] from extensive negotiations by experienced counsel," the Court should "presume" that it is fair. *Carter*, 2025 WL 899854, at *3 (internal quotations omitted). Here, the agreement was reached after a mediation on February 10, 2025, which consisted of "a full day of vigorous, arms-length negotiations" with mediator Mike Ungar, and two further weeks of discussions. (D.N. 50-2, PageID.177 ¶¶ 5–6; D.N. 50-3, PageID.242 ¶¶ 4–5). Courts regularly approve proposed settlements reached under similar circumstances. *See, e.g.*, *Lott*, 2023 WL 2562407, at *2 (noting that "[t]he Agreement was achieved only after arm's-length and good-faith negotiations between the parties and with a third-party mediator[]"). Accordingly, this factor also supports preliminary approval. *See Carter*, 2025 WL 899854, at *3.

### C. Adequacy of Relief

The next factor is whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2). In considering this factor, the Court weighs "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." *Id.*

Mireles's initial complaint demanded $5,000,000. (D.N. 1-1, PageID.49) The proposed gross settlement amount of $2,350,000 (D.N. 50-2, PageID.184 ¶ 57) therefore represents approximately 47% of Mireles's initial demand. (*See* D.N. 1-1, PageID.49) Based on Mireles's representation of 483,000 class members (D.N. 50-2, PageID.183 ¶ 54), the gross settlement amount would provide approximately $5 per class member. Various costs and fees are subtracted from the gross settlement amount, however. Specifically, the proposed settlement deducts from the gross settlement amount "attorneys' fees totaling no more than 35% of the Settlement Fund," (*id.*, PageID.197 ¶ 99); $3,000 as a service award to the class representative (*id.* ¶ 97); "reimbursement of reasonable litigation expenses not to exceed $25,000" (*id.* ¶ 99); and "the entirety of the Notice and Administrative Expenses" to implement the settlement. (*Id.*, PageID.190 ¶ 73) Deducting these costs creates a net settlement amount of $1,499,500 before administrative expenses. Based on Mireles's representation of 483,000 class members (*id.*, PageID.183 ¶ 54), the net settlement amount would provide approximately $3.10 per class member. Moreover, because of the subclass structure of the settlement, if all members recovered pro rata, there would only be $2.37 available for each member outside of the SSN subclass. (*See id.*, PageID.187 ¶ 72(B)(ii))

Ultimately, the proposed settlement probably provides adequate relief, at least at the preliminary-approval stage. *See Carter*, 2025 WL 899854, at *2; *Macy*, 2019 WL 6684522, at *1. The proposed settlement provides up to 35% of the gross settlement amount for attorney fees (D.N. 50-2, PageID.197 ¶ 99), which is similar to the fees approved by courts in this district and elsewhere in the Sixth Circuit. *See Green*, 2022 WL 1240432, at *3–4 (collecting cases); *see also Lott*, 2023 WL 2562407, at *3 (same); *McClurg v. Dallas Jones Enters., Inc.*, No. 4:20-CV-201-RGJ-HBB, 2025 WL 1908974, at *3 (W.D. Ky. July 10, 2025) ("[T]he negotiated fee for class counsel is up to one-third (1/3) of the Gross Settlement Amount, which is within an acceptable range." (internal quotations omitted)); *Strano v. Kiplinger Wash. Editors, Inc.*, 649 F. Supp. 3d 546, 558 (E.D. Mich. 2023) ("[T]he proposed attorney's fees will not exceed 35% of the Settlement Fund, which is adequate" (citations omitted)). Moreover, "[b]ecause they involve new technology and evolving law, the merits of data breach cases like this one are often uncertain." *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548, at *7 (S.D. Ohio Apr. 11, 2025) (citations omitted). Class members would thus not be guaranteed any recovery if the case proceeded to trial. *See* Fed. R. Civ. P. 23(e)(2)(C)(1). As discussed below, however, the Court is concerned that class members' recovery is "perfunctory" in relation to the class representative's proposed service award. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).

The proposed settlement's "proposed method of distributing relief," Fed. R. Civ. P. 23(e)(2)(C)(ii), appears to be effective. (*See* D.N. 50-1, PageID.155–56; D.N. 50-2, PageID.184, 187–89 ¶¶ 58, 72) As discussed above, relief will be distributed via mailed check or electronic payment. (D.N. 50-2, PageID.184 ¶ 58) Finally, there are no side agreements relating to the

proposed settlement. (*Id.*, PageID.198 ¶ 104) In sum, this factor supports preliminary approval of the proposed settlement. *See Carter*, 2025 WL 899854, at *2; *Macy*, 2019 WL 6684522, at *1.

**D. Equitable Treatment**

Next, the Court considers whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). A proposed settlement "may, in some circumstances, be inequitable if it 'gives preferential treatment to the named plaintiff[].'" *Carter*, 2025 WL 899854, at *3 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)). Although "[s]ervice awards are not prohibited within the Sixth Circuit" when based on a "class representative['s] procured benefits, financial risks, and time expended," "sizable award[s] . . . might reflect inequitable or preferential treatment to the named representative's benefit." *McClurg*, 2025 WL 1908974, at *4 (internal quotations and citations omitted). The Court "should be most dubious of incentive payments when they make the class representative[] whole, or . . . even more than whole; for in that case the class representative[] ha[s] no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Carter*, 2025 WL 899854, at *3 (quoting *Dry Max*, 724 F.3d at 722). Thus, the Court must consider "whether the settlement gives preferential treatment to the named plaintiff[] while only perfunctory relief to unnamed class members." *Dry Max*, 724 F.3d at 718 (quotation omitted). In doing so, the Court examines "the extent of [the representative's] personal involvement in litigating th[e] case and the proportionality of the service award to other class members' recoveries." *McClurg*, 2025 WL 1908974, at *4 (citations omitted).

Although this factor does not weigh strongly against preliminary approval, it will certainly "merit more consideration at the final fairness hearing." *Id.* (citing *Duffy v. Mazda Motor of Am., Inc.*, No. 3:24-CV-388-BJB, 2025 WL 517608, at *3 (W.D. Ky. Feb. 17, 2025)). The proposed

settlement provides for a $3,000 service award to Mireles. (D.N. 50-2, PageID.197 ¶ 97) But as noted in part II.C above, once attorney fees, expenses, and the contribution award are taken out of the settlement fund, no more than $3.10 per member remains. Thus, the "proportionality of the service award to other class members' recoveries," *McClurg*, 2025 WL 1908974, at *4 (citations omitted), suggests that the proposed settlement may give "preferential treatment to the named plaintiff[]." *Carter*, 2025 WL 899854, at *3 (citation omitted). Moreover, the Court is concerned that the proposed settlement may provide "only perfunctory relief to unnamed class members." *Dry Max*, 724 F.3d at 718 (quotation omitted).

On the other hand, class counsel Leigh Montgomery attests that Mireles "ably represented the Settlement Class, maintaining contact with proposed Class Counsel, assisting in the investigation of the case, reviewing the material terms of the Settlement Agreement, remaining available for consultation throughout the settlement negotiations[,] and answering . . . many questions" (D.N. 50-3, PageID.253 ¶ 40), which may explain "what the service award compensates [the named Plaintiff] for" so as to justify the disparity. *Carter*, 2025 WL 899854, at *3; *see also McClurg*, 2025 WL 1908974, at *4 (noting that the Court should consider "the extent of [the representative's] personal involvement in litigating th[e] case"). Such assertions are sufficient at the preliminary-approval stage. *See, e.g.*, *Carter*, 2025 WL 899854, at *3–4 (noting potential inequity of proposed settlement's $10,000 service award but nevertheless granting preliminary approval); *Duffy*, 2025 WL 517608, at *3 ($4,000 service award); *McClurg*, 2025 WL 1908974, at *4 ($15,000 service award). At the final-approval stage, however, Mireles should be prepared to further justify the proposed service award by providing "specific documentation—in the manner of attorney time sheets—of the time [he] actually spent on the case." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016).

## E. Sixth Circuit Factors

The Sixth Circuit factors also largely weigh in favor of preliminary approval. First, "[i]n the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008) (citation omitted). The record contains no such evidence here. Moreover, because the settlement was reached through arm's-length negotiation and mediation (D.N. 50-2, PageID.177 ¶¶ 5–6; D.N. 50-3, PageID.242 ¶¶ 4–5), the risk of fraud or collusion is "negligible." *See, e.g.*, *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (citation omitted). The law in data-breach cases is "evolving" and "uncertain," rendering further litigation complicated and risky. *Wasserstrom Holdings*, 2025 WL 1563548, at *7. Given this risk, the probability of success on the merits, "which provides a gauge from which the benefits of the settlement must be measured," also weighs in favor of preliminary approval. *Lewis*, 2013 WL 12231327, at *3 (internal quotation omitted). In addition, class counsel and the class representative support the proposed settlement. (*See generally* D.N. 50-1) Finally, the public interest supports preliminary approval because "[s]ettlement is the preferred means of resolving litigation," and this is especially true for "complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020) (quotations omitted); *see also Duffy*, 2025 WL 517608, at *4.

The remaining factors are either irrelevant or inconsequential. Although the parties engaged in only "informal discovery" before initiating settlement negotiations (*see* D.N. 50-1, PageID.171; D.N. 50-3, PageID.242 ¶ 4), formal discovery is not a prerequisite for preliminary

approval when the plaintiff has sufficient access to information from other sources. *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 898–99 (6th Cir. 2019); *see also Ditsworth v. P&Z Carolina Pizza*, No. 1:20-CV-84-GNS, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021) ("[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." (quoting *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018))); *Cook*, 2022 WL 301796, at *3 (finding that where "the parties ha[d] engaged in only informal discovery, . . . . this factor weigh[ed] only slightly in favor of finding the settlement fair and reasonable"). Class counsel represent that the informal discovery in this case included information "related to class size, unique data sets, and nature of the Data Incident, thereby allowing the Parties to evaluate their respective risks and negotiate from an informed basis." (D.N. 50-2, PageID.177 ¶ 4) Thus, this factor does not preclude preliminary approval. *See Ditsworth*, 2021 WL 2941985, at *3; *Cook*, 2022 WL 301796, at *3 As to the final remaining factor, "[t]he 'reaction of absent class members' is not relevant to the preliminary approval stage analysis." *Ware*, 2020 WL 2441415, at *14 n.4; *see Duffy*, 2025 WL 517608, at *4.

**F. Preliminary Class Certification for Settlement Purposes**

Before directing notice to class members, the Court must also conditionally certify the class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring the Court to direct notice if "justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal"); *In re Flint Water Cases*, 499 F. Supp. 3d 399, 418 (E.D. Mich. 2021). "Though still subject to the Court's final approval at a later date, preliminary certification indicates at this stage that certification is sufficiently 'likely' to justify sending notice to settlement class members." *In re Flint Water Cases*, 499 F. Supp. 3d at 418. Ultimately, "[t]o

be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Branson*, 2025 WL 1908971, at *5 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012)). But "at th[e] preliminary stage, rigorous analysis under Rule 23(a)–(b) is not necessary." *Id.* (citation omitted).

**1. Rule 23(a) Prerequisites**

The Court concludes that the proposed class likely satisfies the four Rule 23(a) prerequisites. As to numerosity, the Court asks whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This factor has "no strict numerical test." *Branson*, 2025 WL 1908971, at *5 (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). When the proposed class "includes thousands of individuals," however, the numerosity requirement is "usually" satisfied. *Daffin*, 458 F.3d at 552. Here, Mireles represents that the proposed class includes 483,000 individuals. (D.N. 50-2, PageID.183 ¶ 54) This number is sufficient. *See Branson*, 2025 WL 1908971, at *5 (noting that "6,667 class members or more certainly suffices"); *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 WL 1031008, at *10 (W.D. Ky. Mar. 17, 2021) ("[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." (alteration in original) (quoting *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020))).

The second factor "requires a common contention that, if resolved, would resolve claims of all class members in one stroke." *Branson*, 2025 WL 1908971, at *5 (internal quotations omitted). Courts in this district have found commonality in data-breach litigation where class members' data was compromised in the same incident. *See Savidge v. Pharm-Save*, 727 F. Supp. 3d 661, 697–99 (W.D. Ky. 2024); *Bowen v. Paxton Media Grp.*, No. 5:21-CV-143-GNS, 2024

WL 1446468, at *4–5 (W.D. Ky. Apr. 3, 2024). As Mireles correctly notes, this action involves several issues common to all class members, including

> [(1)] whether Defendant failed to adequately safeguard the Settlement Class's Private Information; [(2)] whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; [(3)]whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and [(4)] whether Defendant's conduct was negligent.

(D.N. 50-1, PageID.161–62) Thus, the commonality requirement is likely fulfilled here.

As to the typicality requirement, the Court asks whether the class representative's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [their] claims are based on the same legal theory." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Typicality "tend[s] to merge" with the commonality requirement and is also generally satisfied in data-breach litigation like that at issue here. *See Savidge*, 727 F. Supp. 3d at 699–701; *Bowen*, 2024 WL 1446468, at *5. This is so even where the economic injuries class members ultimately suffer from the exposure of their data may differ. *See Savidge*, 727 F. Supp. 3d at 700 ("[I]n similar data breach cases, courts have determined that individualized inquiries into the *amount* of damages for each class member do[] not defeat typicality . . . ." (citing *In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021))). Here, the class representative's claims are based on the same legal theories as those of other class members and arise from the same course of conduct: Cornerstone's handling of their data. (*See generally* D.N. 1) Thus, the typicality requirement is likely satisfied.

Finally, "[t]here are two criteria for determining whether the representation of the class will be adequate: 1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of

the class through qualified counsel." *Branson*, 2025 WL 1908971, at *5 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976)). For the reasons discussed in part II.A above, the adequate-representation requirement appears to be met here. *Carter*, 2025 WL 899854, at *3; *see also Branson*, 2025 WL 1908971, at *5.

**2. Rule 23(b) Requirement**

The Court is also satisfied that the proposed class likely "fall[s] within one of the three types of class actions listed in Rule 23(b)." *Branson*, 2025 WL 1908971, at *5. Mireles contends that preliminary certification is warranted under Rule 23(b)(3). (D.N. 50-1, PageID.160) Certification under Rule 23(b)(3) is appropriate when

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The predominance requirement of Fed. R. Civ. P. 23(b)(3) is like Fed. R. Civ. P 23(a)(2)'s commonality requirement 'in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues predominate over individual issues.'" *Bowen*, 2024 WL 1446468, at *6 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Courts in this district have

generally found predominance in data-breach litigation even when the class members suffered varying degrees of harm. *See Savidge*, 702–07; *Bowen*, 2024 WL 1446468, at *6–7. Because Mireles points to common issues central to this case, including "whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendant breached that duty" (D.N. 50-1, PageID.163), the predominance requirement is likely satisfied here. *See Bowen*, 2024 WL 1446468, at *6–7.

**G. Adequacy of the Proposed Notice**

In the context of Rule 23(b)(3) class actions, class members must be provided "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice is adequate because it satisfies the requirements for "the best notice that is practicable under the circumstances" outlined in Rule 23(c)(2)(B). *See Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-DJH, 2016 WL 9459818, at *3 (W.D. Ky. May 5, 2016). Specifically, the proposed notice explains the nature of the action, contains information regarding the terms of the proposed settlement, defines the settlement class, explains the scope of released claims, explains the binding nature of the settlement, describes the process for making objections and appearing at the fairness hearing, and outlines the proposed attorney fees, costs, and service award. (*See generally* D.N. 50-2, PageID.207–16) Moreover, the proposed notice will be sent via mail and email, when available (*id.*, PageID.190–91 ¶ 79), a procedure supported by Rule 23. *See* Fed. R. Civ. P. 23(c)(2)(B) (explaining that for Rule 23(b)(3) classes, "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means"); *see also Curry v. Bostik, Inc.*, No. 3:22-cv-370-DJH-CHL, 2025 WL 2054365, at *4 (W.D. Ky. July 22, 2025) (observing that "sending notice by both U.S. Mail and email is generally accepted in this circuit

as the preferred way 'to ensure that putative class members receive notice of the pending action.'" (quoting *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-cv-4389, 2023 WL 5352509, at *6 (S.D. Ohio Aug. 21, 2023))). The proposed notice also provides for opt-out via mail or email, as is preferred in this district. *See McClurg*, 2025 WL 1908974, at *5.

**III.**

For the reasons set out above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The Stay previously imposed in this matter (D.N. 21) is **LIFTED**.

(2) Mireles's unopposed motion for preliminary settlement approval (D.N. 50) is **GRANTED**. The Court preliminarily **APPROVES** the parties' settlement agreement. This approval is subject to further consideration at a final approval hearing, following proper notice to the members of the settlement class of the opportunity to object to its terms.

(3) Pursuant to Federal Rule of Civil Procedure 23(e), the Court preliminarily **CERTIFIES** the following class for settlement purposes: "All persons whose Private Information was compromised as a result of the Data Breach discovered by Cornerstone Healthcare Group Management Services LLC in December 2023 and to whom it provided notice." (*See* D.N. 50-2, PageID.183 ¶ 54) The class does not include current or former officers of Cornerstone, or the undersigned or his family members. (*Id.*)

(4) The Court preliminarily **APPOINTS** Plaintiff Emilio Mireles as Class Representative for the Settlement Class.

(5) The Court preliminarily **APPOINTS** Mason LLP and ESKM LLP as Class Counsel for the Settlement Class.

(6) The Court **APPROVES** the notice, notice method, and claim form described in the settlement agreement. Notice shall proceed in accordance with the procedures and methodologies described therein.

(7) The Court **APPROVES** the appointment of Eisner Advisory Group, LLC as Settlement Administrator.

(8) This matter is **SET** for a final fairness hearing on **May 14, 2026, at 1:30 p.m.** at the U.S. Courthouse in Louisville, Kentucky.

(9) Notice **SHALL** be disseminated within **thirty (30) days** of entry of this Order.

(10) Any claims must be submitted within **one hundred twenty (120) days** of entry of this Order.

(11) Members of the settlement class who wish to object to the proposed settlement must submit a written statement of objection that comports with the procedures outlined in the settlement agreement within **ninety (90) days** of entry of this Order. Any requests to opt out of the settlement must likewise be submitted within **ninety (90) days** of entry of this Order. The Settlement Administrator will file any objections received within **ninety-seven (97) days** of entry of this Order. Any responses to objections must be filed no later than **fourteen (14) days** prior to the final fairness hearing. There shall be **no replies**.

(12) Any motions for attorney fees, expenses, and class-representative service awards **SHALL** be filed no later than **twenty-four (24) days** prior to the final fairness hearing.

(13) Any briefs or other documentation in support of final approval must be filed no later than **fourteen (14) days** prior to the final approval hearing.

January 8, 2026

**David J. Hale, Chief Judge**
**United States District Court**