**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| EMILIO MIRELES, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CORNERSTONE HEALTHCARE GROUP MANAGEMENT SERVICES LLC d/b/a CORNERSTONE SPECIALTY HOSPITALS,<br><br>Defendant. | Case No. 3:24-cv-00410-DJH |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS


PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL AND INCORPORATED MEMORANDUM OF LAW ..... i

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iv

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

III. SUMMARY OF THE SETTLEMENT ..... 4

A. Settlement Benefits ..... 4

B. Notice and Claims Administration ..... 5

1. Notice ..... 5

2. Objections, Requests for Exclusion, and Claims. ..... 7

C. Service Awards and Attorneys' Fees and Costs ..... 7

IV. ARGUMENT ..... 7

A. The Notice Program Comports with Due Process. ..... 7

B. The Settlement Class Should Be Certified. ..... 9

C. The Settlement Is Fair, Reasonable, and Adequate, and Should Be Granted Final Approval. ..... 9

1. The Rule 23(e) Factors Weigh in Favor of Final Approval. ..... 10

a. Plaintiff and Class Counsel have met the Requirements of Adequacy. ..... 10

b. The Settlement was negotiated at arm's length. ..... 11

c. The relief provided is adequate. ..... 12

i. The Settlement provides substantial relief for the Class. ..... 12

ii. The costs, risks, and delay of trial and appeal are significant. ..... 13

iii. The method of processing claims and distributing relief is clear and efficient. ..... 14

iv. The terms of proposed attorneys' fees and service awards are reasonable. ..... 15

v. No agreements require disclosure under Rule 23(e)(3). ..... 16

d. The Settlement Class Members are treated equitably. ..... 16

2. The Proposed Settlement Satisfies the "Traditional Factors" Considered by Sixth Circuit Courts. ..... 17

a. There is no risk of fraud or collusion. ..... 17

b. Prolonged litigation would be costly, complex, and lengthy. ..... 18

c. The Parties exchanged informal discovery during mediation. ..... 18

d. Prolonged litigation brings significant risks. ..... 19

e. Class Counsel and the Named Plaintiff Support the Settlement. ..... 20

f. The reaction of absent Class Members has been positive. ..... 20

g. The Settlement serves the public interest. ..... 21

D. The Court Should Affirm its Appointments of Class Counsel and Class Representative ..... 21

V. CONCLUSION ..... 22

CERTIFICATE OF CONFERENCE ..... 24

CERTIFICATE OF SERVICE ..... 24

# TABLE OF AUTHORITIES

## CASES

*Bandy v. TOC Enters., Inc.*,
No. 3:23-cv-00598 (M.D. Tenn. Mar. 14, 2024) .......... 13

*Beasley v. TTEC Servs. Corp.*,
Nos. 22-cv-00097 & 22-cv-00347, 2024 WL 710411 (D. Colo. Feb. 21, 2024) .......... 14

*Bert v. AK Steel Corp.*,
No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) .......... 12

*Bowen v. Paxton Media Grp., LLC*,
No. 5:21-CV-00143, 2024 WL 1446468 (W.D. Ky. Apr. 3, 2024) .......... 16

*Bronson v. Bd. of Educ. of City Sch. Dist. of Cincinnati*,
604 F. Supp. 68 (S.D. Ohio June 22, 1984) .......... 12

*Chacon v. Nebraska Med.*,
No. 8:21-cv-00070 (D. Neb. Sept. 15, 2021) .......... 13

*Coleman v. Amazon.com, Inc.*,
No. 2:21-cv-02200, 2025 WL 582495 (W.D. Tenn. Feb. 21, 2025) .......... 21

*Corra v. ACTS Ret. Servs., Inc.*,
No. 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024). .......... 14

*Dick v. Sprint Commc'ns Co. L.P.*,
297 F.R.D. 283 (W.D. Ky. 2014). .......... 8

*Ditsworth v. P & Z Carolina Pizza*,
No. 1:20-CV-00084, 2021 WL 2941985 (W.D. Ky. July 13, 2021). .......... 19

*Does 1–2 v. Déjà Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) .......... 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974). .......... 8, 21

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008). .......... 8

*Fitzgerald v. P.L. Mktg., Inc.*,
No. 2:17-cv-02251, 2020 WL 3621250 (W.D. Tenn. July 2, 2020) .......... 15

*Fulton-Green v. Accolade, Inc.*,
No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019) ............ 13

*Gokare v. Fed. Express Corp.*,
No. 2:11-CV-2131, 2013 WL 12094870 (W.D. Tenn. Nov. 22, 2013)............ 18

*Green v. Platinum Rests. Mid-America LLC*,
No. 3:14-cv-439, 2022 WL 1240432 (W.D. Ky. Apr. 27, 2022) ............ 20

*Hacker v. Elec. Last Mile Sols. Inc.*,
No. 22-54, 2024 WL 1231257 (D.N.J. Mar. 21, 2024) ............ 10

*Hainey v. Parrott*,
617 F. Supp. 2d 668 (S.D. Ohio 2007)............ 18

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
No. 11–14275, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013)............ 9

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ............ 14

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003)............ 21

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............ 21

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)............ 8

*In re Se. Milk Antitrust Litig.*,
No. 2:07-cv-208, 2012 WL 12875983 (E.D. Tenn. July 11, 2012) ............ 15

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-6019, 2024 WL 1557366 (E.D. Pa. Apr. 9, 2024)............ 14, 18

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006)............ 21

*Jackson v. Nationwide Ret. Sols., Inc.*,
No. 2:22-cv-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024) ............ 18

*Johnson v. W2007 Grace Acquisition I, Inc.*,
No. 13-cv-2777, 2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015). ............ 15

*Jones v. Varsity Brands LLC*,
No. 2:20-cv-02892, 2024 WL 5010412 (W.D. Tenn. Dec. 6, 2024) ........................................ 18

*Kenney v. Centerstone of Am., Inc.*,
No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021)........................................................................ 13

*Kutzback v. Riviana Foods, Inc.*,
No. 2:22-cv-02025, 2023 WL 2261417 (W.D. Tenn. Feb. 27, 2023)...................................... 12

*Leonhardt v. ArvinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008). ............................................................................ 10, 18

*Logan v. Marker Grp., Inc.*,
No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024)......................................... 14

*McChurg v. Dallas Jones Enters., Inc.*,
No. 4:20-cv-201-RGJ-HBB, 2025 WL 1908974 (W.D. Ky. July 10, 2025) ............................ 15

*McFarlane v. Altice USA, Inc.*,
No. 20-CV-1297, 2021 WL 860584 (S.D.N.Y. Mar. 8, 2021)................................................. 17

*Mowery v. Saint Francis Healthcare Sys.*,
No. 1:20-cv-00013 (E.D. Mo. Dec. 22, 2020) ........................................................................... 13

*Officers for Just. v. Civ. Serv. Comm'n of S.F.*,
688 F.2d 615 (9th Cir. 1982) ...................................................................................................... 19

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ............................................................................................... 21

*Osman v. Grube, Inc.*,
No. 3:16-cv-00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018).......................................... 16

*Peck v. Air Evac EMS, Inc.*,
No. 5: 18-615-DCR, 2019 WL 3219150 (E.D. Ky. July 17, 2019).......................................... 16

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011). ..................................................................................................... 19

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111, 2019 WL 7946103 (D. Mass. Dec. 31, 2019)........................................ 17

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020)........................................... 17

*Salinas v. U.S. Xpress Enters., Inc.*,
No. 1:13-cv-00245, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ........................................ 16

*Senter v. Gen. Motors Corp.*,
532 F. 2d 511 (6th Cir. 1976). ..........................................................................................11

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)............................................................................................. 16

*UAW v. Ford Motor Co.*,
No. 07-CV-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ....................................... 20

*UAW v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007). ...................................................................................... 8, 10

*UAW v. Gen. Motors Corp.*,
No. 05–CV–73991–DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) .................................... 8

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
726 F.2d 956 (3d Cir. 1983) ............................................................................................ 16

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983). ............................................................................................ 9

**OTHER AUTHORITIES**

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010). ............................................................................................ 8

**RULES**

Fed. R. Civ. P. 23.............................................................................................. 1, 8, 9, 10

Fed. R. Civ. P. 23(a). ....................................................................................................... 9

Fed. R. Civ. P. 23(b). ....................................................................................................... 9

Fed. R. Civ. P. 23(c). ....................................................................................................... 8

Fed. R. Civ. P. 23(e). ................................................................................ 9, 10, 16, 17, 22

Fed. R. Civ. P. 23(g). ..................................................................................................... 22

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Emilio Mireles respectfully submits this Motion for Final Approval (the "Motion"). For the reasons set forth in the Memorandum incorporated herewith, Plaintiff's Motion for Attorneys' Fees, Costs and Service Awards and accompanying Declarations of Class Counsel ("Montgomery Decl") and Plaintiff ("Mireles Decl") (D.N. 72, 72-1, and 72-3), and the Declaration of Ryan Aldridge of Eisner Advisory Group, LLC ("Admin. Decl."), attached hereto as Exhibit A, and all other pleadings and papers on file in this action, Plaintiff respectfully requests this Court:

1. Grant final certification of the Class for settlement purposes only;
2. Appoint Plaintiff Emilio Mireles as Class Representative;
3. Appoint Mason & Perry LLP and EKSM, LLP as Class Counsel;
4. Find that the Notice met the requirements of due process and Federal Rule of Civil Procedure 23;
5. Find that the terms of the Settlement Agreement are fair, reasonable, and adequate and are approved, adopted, and incorporated by the Court;
6. Direct the Parties, their respective attorneys, and the Settlement Administrator to consummate the Settlement in accordance with the Court Order and the terms of the Settlement Agreement; and
7. Resolve all claims against all Parties in this Action and issue the Proposed Final Approval Order filed herewith.

## I. INTRODUCTION

On January 8, 2026, this Court preliminarily approved a settlement between Plaintiff Emilio Mireles and Cornerstone Healthcare Group Management Services LLC d/b/a Cornerstone Specialty Hospitals ("Defendant"). ECF No. 67. The Settlement is fair, reasonable, and adequate,

and delivers immediate and significant benefits to the approximate 483,000-person Settlement Class while avoiding the delay and uncertainty of protracted litigation.

Specifically, the Settlement provides for a $2,350,000.00 non-reversionary common fund, from which Settlement Class Members (including Members of the SSN Subclass) may claim relief. SSN Subclass Members may elect to receive credit monitoring and identity restoration services, as well as either reimbursement for Documented Monetary Losses up to $10,000.00 or a *pro rata* cash payment. Settlement Agreement ¶ 72 ("S.A."), ECF No. 50-2.[1] Settlement Class Members not belonging to the SSN Subclass can claim reimbursement of Documented Monetary Losses up to $2,500.00 or a *pro rata* cash payment. *Id.* The Settlement Fund will also be used to pay Notice and Settlement Administration Costs, Court-awarded Service Awards, and Court-awarded attorneys' fees, costs, and expenses. S.A. ¶ 65.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. The Notice Campaign included both a direct mail campaign and a media campaign with an estimated reach in total of 73% of the Settlement Class. Admin Decl. ¶ 23. The Notice provided Settlement Class Members with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. *See* Admin Decl. Exs. A, B. As of April 29, 2026, out of approximately 483,000 Settlement Class Members, only two have sought to exclude themselves from the Settlement, and zero have objected.[2] *Id.* ¶¶ 20–21. The Claims Period is still open and will run through May 8, 2026. *Id.* ¶ 14.

[1] All capitalized terms not defined herein are defined in the Settlement Agreement.

[2] The deadline to request exclusion (opt-out) from the Settlement or to object to the Settlement was April 8, 2026.

The Settlement is fair, reasonable, and adequate, and provides certain benefits to Settlement Class Members. Plaintiff strongly believes the Settlement is favorable to the Settlement Class and now moves the Court for Final Approval. Because the Settlement satisfies all Final Approval criteria, this Court should grant Plaintiff's request.

## II. BACKGROUND

On December 19, 2023, cybercriminals gained unauthorized access to Defendant Cornerstone Healthcare Management Services LLC's ("Defendant" or "Cornerstone") information systems and accessed and exfiltrated the Private Information, including those belonging to Defendant's former and current patients. S.A. ¶ 1. After the announcement of the Data Incident, Plaintiff filed a putative class action lawsuit against Defendant, alleging that Defendant failed to properly protect the Private Information in accordance with its duties, had inadequate data security, was unjustly enriched by the use of the Private Information, and improperly or inadequately notified potentially impacted individuals. *Id.* In or about July 2024, Defendant began notifying individuals that their Private Information may have been compromised in the Data Incident. *Id.*

On August 15, 2024, the Parties jointly requested a stay to allow them to pursue settlement negotiations. S.A. ¶ 3. Prior to mediation, Defendant responded to informal discovery requests propounded by Plaintiff related to class size, unique data sets, and nature of the Data Incident, thereby allowing the Parties to evaluate their respective risks and negotiate from an informed basis as to the strengths and weaknesses of claims and defenses to reach a reasonable settlement value. S.A. ¶ 4.

On February 10, 2025, the Parties attended a mediation via Zoom with Mike Ungar of UB Greensfelder LLP. Prior to mediation, the Parties fully briefed relevant issues and discussed

potential settlement structure. After a full day of vigorous, arm's-length negotiations, the Parties were unable to reach an agreement on the terms of a settlement. S.A. ¶ 5.

In March 2025, the Parties "reached a settlement in principle." ECF No. 38. Plaintiff moved for preliminary approval of the proposed class-action settlement, and Defendant did not oppose the motion. ECF No. 50. The Court held a preliminary fairness hearing on November 5, 2025, and took the matter under advisement. The Court granted preliminary approval of the Settlement on January 8, 2026, including preliminary approval of proposed Class Counsel and the Service Award. Since the Court entered the Preliminary Approval Order, the Parties have worked with the Settlement Administrator to implement the Notice Program and the Claim Process.

## III. <u>SUMMARY OF THE SETTLEMENT</u>

Plaintiff seeks Final Approval for the Settlement Class comprised of "all persons whose Private Information was compromised as a result of the Data Breach discovered by Cornerstone Healthcare Group Management Services, LLC in December 2023 and to whom it provided notice." S.A. ¶ 54. The Settlement Class specifically includes a SSN Subclass of individuals whose Social Security numbers were potentially compromised during the Data Incident. S.A. ¶ 61. Excluded from the Settlement Class are (1) the Judge presiding over this Litigation, and members of his direct family; (2) the Defendant and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. S.A. ¶ 54. There are estimated to be 483,000 Members of the Settlement Class. *Id.* The Parties agree to settle this class action on the below terms. *Id.*

### A. Settlement Benefits

The $2,350,000.00 Qualified Settlement Fund will be used to pay (1) the cost of Notice and Administrative Expenses, (2) Settlement Payment(s), (3) a Court-approved Fee Award and

Expenses, (4) a Court-approved Service Award for the Class Representative, and (5) certain Settlement Fund taxes and costs. S.A. ¶ 65. SSN Subclass Members may elect to receive credit monitoring and identity restoration services, as well as either reimbursement for Documented Monetary Losses up to $10,000.00 or a *pro rata* cash payment. S.A. ¶ 72. Settlement Class Members not belonging to the SSN Subclass can claim reimbursement of Documented Monetary Losses up to $2,500.00 or a *pro rata* cash payment. *Id. Pro rata* cash payments are weighted such that Members of the SSN Subclass will receive three times the amount of the *pro rata* cash payments received by Class Members who are not a part of the SSN Subclass. *Id.* To receive reimbursement for Documented Monetary Losses, Settlement Class Members must fill out the Claim Form, attesting under penalty of perjury that they incurred documented losses, and submit reasonable documentation of those losses. *Id.* ¶ 72.B.

**B. Notice and Claims Administration**

***1. Notice***

After obtaining preliminary approval of the Class Action Settlement and Notice Program, the Parties worked with EAG to administer notice consistent with that contemplated by the Settlement and designed to reach as many Settlement Class Members as practicable.

On January 26, 2026, EAG received eight Excel files with 322,107 records consisting of names, addresses, and SID Numbers. Admin Decl. ¶ 4. After de-duplicating the files, EAG determined that 184,224 unique Class records existed across the eight files based on name and unique SID. Admin Decl. ¶ 5. Prior to mailing postcards to the Settlement Class Members for whom addresses were available, all mailing addresses were checked against the National Change of Address (NCOA) database maintained by the United States Postal Service ("USPS"). In addition, the addresses were certified via the Coding Accuracy Support System (CASS) to ensure

the quality of the zip code and verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses. *Id.* ¶ 6. EAG executed Postcard Notice mailings to a total of 183,462 Settlement Class Members. *Id.* ¶ 7. EAG also executed supplemental mailing for 11,836 Settlement Class Members for which the initial Postcard Notice was not deliverable but for which EAG was able to obtain an alternative mailing address through (1) forwarding addresses provided by the USPS, or (2) skip trace searches using third-party vendor database. *Id.* In all, EAG estimates that approximately 79.83% of the individuals on the Class List with ascertainable addresses received direct notice—accounting for a little over 30% of the estimated total Class. *Id.* ¶ 13.

To supplement the individual and direct notice, EAG also carried out a digital notice campaign. *Id.* ¶ 8. From February 6, 2026 through March 5, 2026, EAG implemented a digital campaign across the Google Display Network, Facebook, and Instagram. The notices were geotargeted to adults in Arkansas, Arizona, Kentucky, Louisiana, Oklahoma, Texas, and West Virginia who received healthcare services. *Id.* In total, 172,916,169 impressions were generated during the four-week campaign. *Id.*

In addition to the direct and digital notice campaigns, EAG created and maintains a Settlement Website, a Post Office Box, a dedicated toll-free number, and email inbox. *Id.* ¶¶ 9–12. On the Settlement Website, www.CSHealthcareSettlement.com, visitors can download the Long Form Notice, the Claim Form, as well as Court Documents, such as the Settlement Agreement, Orders of the Court, and other relevant documents. *Id.* ¶ 9. Visitors can also submit claims electronically and find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Settlement Administrator. *Id.* As of April 29, 2026, the Settlement Website has received 632,644 page views from 201,803 unique visitors. *Id.* Settlement

Class Members can also call in to the toll-free number or contact the Claims Administrator via mail or email if they have additional questions. *Id.* ¶¶ 10–12.

### *2. Objections, Requests for Exclusion, and Claims.*

As of April 29, 2026, out of approximately 483,000 Settlement Class Members, only two have sought to exclude themselves from the Settlement, and zero have objected. *Id.* ¶¶ 20–21. While over 69,000 claims have been submitted, approximately 3,746 have been determined valid. *Id.* ¶ 14. EAG has high confidence that remaining claims are fraudulent or duplicative. *See id.* ¶¶ 14–15. EAG will continue to process and analyze claims as they come in.

The deadline to opt-out or object to the Settlement closed on April 8, 2026. *Id.* The Claims Period is still open and will run through May 8, 2026. *Id.* ¶ 14.

### C. Service Awards and Attorneys' Fees and Costs

The Settlement Fund also provides for payment of Class Counsel's Court-awarded attorneys' fees, costs, and expenses, and a reasonable Service Award for the Class Representative. *Id.* ¶¶ 65, 68. Subject to Court approval, the Agreement provides for a $3,000.00 Service Award for the Class Representative from the Settlement Fund. S.A. ¶ 97. While the Settlement permits Class Counsel to seek an attorneys' fees award totaling 35% of the Settlement Fund, Class Counsel have, by separate motion, sought an award of 33%, or $783,333.33. S.A. ¶ 99; Pl.'s Mot. for Attorneys' Fees, Costs, and Service Award ("Fee Motion"), ECF No. 72. Class Counsel negotiated attorneys' fees, costs, expenses, and a Service Award as part of the total Settlement Class Member Benefits only after agreeing to the Settlement's material terms. Montgomery Decl. ¶ 6. This Settlement is not contingent on approval of the requested fees or a Service Award. S.A. ¶ 100.

## IV. <u>ARGUMENT</u>

### A. The Notice Program Comports with Due Process.

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, No. 05–CV–73991–DT, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due process does not require that every class member receive actual notice. Rather, a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (holding that notice was "the best notice practicable" where mail and publication notice reached 81.8% of the class).

Here, the Postcard Notice provides information about the Settlement in clear, concise terms. Admin Decl. Ex. A. Both the Postcard Notice and digital publication notice directs Settlement Class Members to the Settlement Website where they can make a claim or get even more detailed information about the Settlement. *Id.* Exs, B, C, and D. Additionally, EAG estimates

that approximately 80% of the individuals on the Class List with ascertainable addresses received direct notice—accounting for a little over 30% of the estimated total Class. *Id.* ¶ 13. As such, the Notice Program here clearly provides due process and satisfies the requirements of Rule 23.

**B. The Settlement Class Should Be Certified.**

In its Preliminary Approval Order, the Court undertook a detailed analysis of each of the elements of Rules 23(a) and 23(b)(3) and provisionally certified a Settlement Class of "[a]ll persons whose Private Information was compromised as a result of the Data Breach discovered by Cornerstone Healthcare Group Management Services LLC in December 2023 and to whom it provided notice." ECF No. 67, at 13–17. For efficiency, Plaintiff incorporates by reference his Class arguments from the Motion for Preliminary Approval. ECF No. 50. For the same reasons the Court granted provisional approval, the Court should grant final certification to the Settlement Class.

**C. The Settlement Is Fair, Reasonable, and Adequate, and Should Be Granted Final Approval.**

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11–14275, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008). Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to front-load the class action settlement process to the preliminary approval stage. *See Hacker v. Elec. Last Mile Sols. Inc.*, No. 22-54, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024) ("At the preliminary approval stage, the Court is required to peer

ahead, and to ask whether it is 'likely' to ultimately approve the proposed settlement at the end-of-the-line fairness hearing.") (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors for consideration: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

***1. The Rule 23(e) Factors Weigh in Favor of Final Approval.***

The Settlement easily satisfies the Rule 23(e)(2) factors.

a. <u>Plaintiff and Class Counsel have met the Requirements of Adequacy.</u>

Plaintiff and Class Counsel have adequately represented the Class and secured an excellent result. Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. Plaintiff has common interests with unnamed Members of the Class, and has vigorously represented the interests of the Class through qualified counsel. *See Senter v. Gen.*

*Motors Corp.*, 532 F. 2d 511, 525 (6th Cir. 1976). As the putative Class Representative, Plaintiff has represented the Class admirably. He made himself available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and otherwise helped prosecute this case diligently. Montgomery Decl. ¶ 11. Class Counsel are experienced and respected class action litigators with significant experience in data breach cases who negotiated the proposed Settlement on behalf of Plaintiff. *Id.* ¶ 12. Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Defendant's investigation of the Data Security Incident. *Id.* ¶ 4. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiff and putative Class Members, analyzed the documents and information produced by Defendant in advance of mediation, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this matter, as well as the applicable laws. *Id*. Following the Parties' February 10, 2025, mediation, Class Counsel drafted the proposed Settlement, revised those drafts, and negotiated the details of the final proposed Settlement with Defendant's Counsel. *Id.* ¶¶ 5–6. This factor weighs in favor of final approval.

b. The Settlement was negotiated at arm's length.

The Settlement was negotiated at arm's length through a highly qualified and renowned mediator, Mike Ungar of UB Greensfelder LLP, taking place after the Parties had exchanged information sufficient to adequately assess the strengths and weaknesses of the case. S.A. ¶¶ 9–11. The mediation and subsequent negotiations were undoubtedly hard fought and absent of any collusion. Indeed, the Parties relied on Mr. Ungar's assistance to reach the ultimate agreement. *Id.*; *see Kutzback v. Riviana Foods, Inc.*, No. 2:22-cv-02025, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023) (citing *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D.

Ohio Oct. 23, 2008) (holding that "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties")); *Bronson v. Bd. of Educ. of City Sch. Dist. of Cincinnati*, 604 F. Supp. 68, 78 (S.D. Ohio June 22, 1984) (approving settlement where there was no hint of collusion in the negotiating process).

c. <u>The relief provided is adequate.</u>

*i. The Settlement provides substantial relief for the Class.*

The Settlement guarantees Class Members relief for real harms and assurance that they are less likely to experience real harm from the Data Incident (and other incidents) in the future. Not only can Plaintiff and Class Members be reimbursed for costs they incurred related to the Data Incident but they can also receive up to two years of Credit Monitoring and Identity Restoration Services that includes identity theft insurance designed to protect them if their information is misused in the future. Expense reimbursements will be provided for documented losses related to the Data Incident in an amount up to $10,000 per person for Members of the SSN Subclass, and up to $2,500 for Class Members not a part of the SSN Subclass. S.A. ¶ 72. In lieu of claiming Documented Losses, Settlement Class Members may claim a *pro rata* cash payment. *Id.* The SSN Subclass Member *pro rata* cash payment shall be three times the amount of that provided to Class Members not a part of the SSN Subclass. *Id.*

The Settlement terms here fall within the range of those approved by other courts for similar data breaches. *See, e.g.*, *Bandy v. TOC Enters., Inc.*, No. 3:23-cv-00598 (M.D. Tenn. Mar. 14, 2024) (granting final approval of settlement providing $1,500 in reimbursement for documented ordinary losses, up to $4,0000 per class member for documented extraordinary losses, payment for up to four hours of lost time at $20 per hour, and two years of single bureau credit

monitoring); *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021) (granting final approval of settlement providing up to $500 in ordinary expense reimbursements, $1,500 in extraordinary expense reimbursements, and up to two years of credit monitoring services); *Chacon v. Nebraska Med.*, No. 8:21-cv-00070 (D. Neb. Sept. 15, 2021) (granting final approval of settlement providing up to $300 in ordinary expense reimbursement, $3,000 in extraordinary expense reimbursements, and one-year of credit monitoring services); Order Granting Final Approval, *Fulton-Green v. Accolade, Inc.*, No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019), ECF No. 39 (granting approval of data breach class action settlement providing for expense reimbursement up to $1,500 per class member, and increased cyber security measures of undisclosed worth for two years following the Data Incident); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013 (E.D. Mo. Dec. 22, 2020) (approving settlement in healthcare data breach matter providing for up to $180 in reimbursements per class member, as well as one-year credit monitoring and identity theft restoration services).

More importantly, the amount that each valid claimant will actually be paid is significant. As of April 29, 2026, approximately nine days prior to the Claims Deadline, there have been 3,746 valid claims. Even assuming a typical uptick in claims as the deadline approaches such that 5,000 Class Members make a claim, the average amount each claimant will receive is approximately $268.00.[3]

*ii. The costs, risks, and delay of trial and appeal are significant.*

---

[3] The total Settlement Fund is $2,350,000. Assuming the Court grants Plaintiff's motion for attorney' fees of one-third ($783,333.33), costs ($18,986.26), and Service Award ($3,000), and factoring in the cap on the costs of Settlement Administration ($201,000), there is $1,343,680.47 remaining in the Settlement Fund to pay valid claimants.

As courts have recognized, data breach litigation is inherently complex. *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. Apr. 9, 2024) ("Data breach litigation is inherently complex."); *Beasley v. TTEC Servs. Corp.*, Nos. 22-cv-00097 & 22-cv-00347, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024); *Corra v. ACTS Ret. Servs., Inc.*, No. 22-2917, 2024 WL 22075, at *14 (E.D. Pa. Jan. 2, 2024). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles-even just to make it past the pleading stage. *See, e.g.*, *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case). While Plaintiff disputes Defendant's defenses, absent settlement, Plaintiff and Class Members would face a number of difficult challenges, including surviving a motion to dismiss, obtaining class certification, and maintaining certification through trial and likely motions for summary judgment.

*iii. The method of processing claims and distributing relief is clear and efficient.*

The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members pursuant to the terms of the Settlement. S.A. ¶ 83. After the Settlement is approved and the time for any appeal has passed, the Settlement Administrator will also be responsible for processing claims and transmitting Settlement Class Member payments via check and/or electronic payment and providing enrollment codes for those Class Members who made a claim for credit monitoring services. S.A. ¶¶ 58, 83. As such, the Settlement provides for effective processing and distribution of relief and should be approved.

*iv. The terms of proposed attorneys' fees and service awards are reasonable.*

Plaintiff here seeks reasonable attorneys' fees totaling one-third of the Settlement Fund ($783,333.33), reimbursement of costs necessary to litigation ($18,986.26), and a Service Award in the amount of $3,000. Fees of one-third of a common fund are regularly approved by Sixth Circuit Courts. *See McChurg v. Dallas Jones Enters., Inc.*, No. 4:20-cv-201-RGJ-HBB, 2025 WL 1908974, at *3 (W.D. Ky. July 10, 2025); *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-02251, 2020 WL 3621250 (W.D. Tenn. July 2, 2020) (approving fees equal to 33 1/3% of the $1,575,000 settlement fund); *In re Se. Milk Antitrust Litig.*, No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33.33 percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"). The costs sought by Counsel are reasonable and necessary to litigation, and include such costs as filing fees, *pro hac* fees, and the costs of mediation. *Fitzgerald v. P.L. Mktg., Inc.*, 2020 WL 3621250, at *11 (awarding reimbursement of expenses including filing fees, *pro hac vice* fees, service fees, and mediator fees); *see also Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-cv-2777, 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015). The Service Award is also reasonable, and consistent with those approved by Sixth Circuit Courts. *See, e.g.*, *Fitzgerald v. P.L. Mktg., Inc.*, 2020 WL 3621250, at *11 (approving service award of $7,500 to plaintiffs who participated in client interviews and produced relevant documents); *Salinas v. U.S. Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000); *Osman v. Grube,*

*Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (approving $7,500 service payment to named plaintiff).[4]

*v. No agreements require disclosure under Rule 23(e)(3).*

There are no agreements here that require disclosure under Rule 23(e)(3).

d. The Settlement Class Members are treated equitably.

And finally, all Settlement Class Members are treated equitably. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). This requirement can be satisfied even when, as here, the Class Members will be entitled to different amounts. *Peck v. Air Evac EMS, Inc.*, No. 5: 18-615-DCR, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based on the actual number of unpaid overtime hours that each person worked.").

Here, Class Members are entitled to different amounts based on whether their Social Security numbers were put at risk by the Data Incident, and whether they have incurred actual documented losses related to the Data Incident. Such differentiation is appropriate. *See Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143, 2024 WL 1446468, at *9 (W.D. Ky. Apr. 3, 2024) ("While the class members may receive different amounts, such amounts will be based on the ordinary and extraordinary losses incurred by class members up to the individual caps established in the proposed Agreement. Thus, the Court finds that the class members are to be treated equitably

---

[4] More detailed arguments in support of Plaintiff's request for attorneys' fees, costs, and Service Award are included in Plaintiff's separate motion, at ECF No. 72.

relative to each other."); *see also Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security numbers."), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *see also McFarlane v. Altice USA, Inc.*, No. 20-CV-1297, 2021 WL 860584, at *4 (S.D.N.Y. Mar. 8, 2021) (citations omitted) (the court noted that plaintiffs' Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, . . . tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target his in fraudulent schemes and identity theft attacks.").

Additionally, while the Class Representative has sought a Service Award of $3,000, this award is justified based on his contributions to the case. *See* Decl. of Emilio Mireles, at ECF No. 72-2 (describing his efforts on behalf of the Class); *See also* Pl.'s Mot. for Fees, Costs, and Service Award, at ECF No. 72. Moreover, the $3,000 sought is well within the range of documented out-of-pocket loss reimbursements available to every Class Member ($2,500 available to Class Members, and $10,000 available to Class Members who are part of the SSN Subclass.).

Thus, the Rule 23(e) factors are satisfied.

**2. *The Proposed Settlement Satisfies the "Traditional Factors" Considered by Sixth Circuit Courts.***

a. <u>There is no risk of fraud or collusion.</u>

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands LLC*, No. 2:20-cv-02892, 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024) (quoting *Leonhardt*, 581 F. Supp. 2d at 838). Furthermore, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Gokare v. Fed. Express Corp.*, No. 2:11-CV-2131, 2013 WL 12094870, at *3 (W.D. Tenn. Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Here, no fraud or collusion existed in the Parties' settlement negotiations, which were facilitated by a well-qualified mediator. Montgomery Decl. ¶ 5. This factor also weighs in favor of final approval.

b. Prolonged litigation would be costly, complex, and lengthy.

As courts have recognized (and as discussed further above), data breach litigation is inherently complex. *See*, *e.g.*, *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-3499, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("[T]he technical issues involved in data breach cases are complex."); *In re Wawa*, 2024 WL 1557366, at *20 ("Data breach litigation is inherently complex."). Data breach cases require significant technical knowledge and testimony from expensive expert witnesses, who often cost more than $600 per hour. Montgomery Decl. ¶ 10. These cases are made even more complex because courts still struggle with how to analyze these claims and often come to inconsistent conclusions. *Id.* Thus, the complexity and expense required to engage in prolonged data breach litigation also weigh in favor of final approval.

c. The Parties exchanged informal discovery during mediation.

Courts also consider the stage of the litigation and amount of discovery exchanged between the Parties. However, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of

the parties." *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-CV-00084, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021). Here, the Parties agreed to negotiate resolution of this matter and ultimately agreed to a resolution without the need for expensive and prolonged formal discovery. Instead, they engaged in the informal exchange of information leading up to and during mediation. The information exchanged was more than sufficient to fully understand the relative positions of the Parties, including the strength of the case. Montgomery Decl. ¶ 4. Thus, this factor also weighs in favor of final approval.

d. Prolonged litigation brings significant risks.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). But courts are "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (quoting *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Plaintiff and Class Counsel strongly believe that the claims presented in this case are meritorious and that Plaintiff would prevail at trial. Montgomery Decl. ¶ 10. Defendant, though, still maintains that it is not liable. Plaintiff and Class Counsel understand the risks and delays associated with prolonged litigation and believe the proposed Settlement benefits here outweigh the risks and delays associated with continued litigation. *Id.* Indeed, if Plaintiff continued with this litigation in lieu of Settlement, Plaintiff and Class Members would likely face years of delays in getting access to important Settlement Class Member Benefits. Absent Settlement, Plaintiff faces the specter of protracted litigation concerning Defendant's motion to dismiss and objections to

class certification, a summary judgment motion, defending expert opinions, trial, and appeals. Moreover, to Class Counsel's knowledge, no data breach case has ever gone to trial. *Id.* Thus, the probability of success at trial has simply never been tested. Nor have the damages a jury may award. Further, Plaintiff is aware that Cornerstone faces heightened regulatory scrutiny and litigation risk in connection with other, unrelated matters, which places Defendant in a potential problematic position and places additional risk on the Class that it could receive nothing.

Thus, although Plaintiff and Class Counsel believe in the strength of this case, they understand that these issues would cause significant delay, thus making settlement even more reasonable. Thus, this factor weighs in favor of final approval.

e. Class Counsel and the Named Plaintiff Support the Settlement.

"'The endorsement of the parties' counsel is entitled to significant weight[ ] and supports the fairness of the class settlement.'" *Green v. Platinum Rests. Mid-America LLC*, No. 3:14-cv-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Here, the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the Settlement is fair and reasonable. *Id.*; Montgomery Decl. ¶¶ 7, 9. Plaintiff also supports the Settlement. *See* Decl. of Emilio Mireles, at ECF No. 72-2 ¶ 6.

f. The reaction of absent Class Members has been positive.

The reaction of absent Class Members further supports final approval. In most class settlements, a small number of opt outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here,

only two Class Members have requested to be excluded, and none have objected. Admin. Decl. ¶¶ 20–21. This factor, therefore, plainly weighs in favor of final approval. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 527 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement.").

g. The Settlement serves the public interest.

Courts have often espoused "a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Coleman v. Amazon.com, Inc.*, No. 2:21-cv-02200, 2025 WL 582495, at *6 (W.D. Tenn. Feb. 21, 2025) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530). Further, when individual class members seek relatively low damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information—especially given that such privacy violations would likely go unredressed in the absence of a class action. Thus, the strong public interest in favor of settlement supports final approval.

**D. The Court Should Affirm its Appointments of Class Counsel and Class Representative**

In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily appointed Plaintiff as Class Representative pursuant to Rule 23(e)(2)(A), and Mason

& Perry LLP[5] and EKSM, LLP as Class Counsel for the Plaintiff's Settlement Class pursuant to Rule 23(g)(1). Because nothing has changed regarding the Court's appointment of Class Representative and Class Counsel, the Court should affirm its appointments. For efficiency, Plaintiff incorporates by reference his Class Counsel and Class Representative arguments from the Motion for Preliminary Approval. ECF No. 50.

## V. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant final approval to the Class Settlement Agreement. Moreover, Plaintiff respectfully moves the Court for an order (1) affirming its appointment of Class Counsel, (2) affirming its appointment of Class Representative, (3) affirming its conditional certification of the Class for the purposes of Settlement only, (4) holding that the notice program complied with due process requirements, and (5) holding that the Settlement is fair, reasonable, and adequate.

[5] Plaintiff filed a notice of firm name change on April 28, 2026. Mason LLP is now known as Mason & Perry LLP.

Dated: April 30, 2026

Respectfully Submitted,

*/s/Leigh S. Montgomery*
Jarrett L. Ellzey*
Leigh S. Montgomery*
**EKSM, LLP**
4200 Montrose Blvd, Suite 200
Houston, TX 77006
Phone: (888) 350-3931
Email: jellzey@eksm.com
Email: lmontgomery@eksm.com

Danielle L. Perry*
Gary E. Mason*
Lisa A. White*
**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Phone: (202) 429-2290
Email: dperry@masonllp.com
Email: gmason@masonllp.com
Email: lwhite@masonllp.com

***Attorneys for Plaintiff and the Proposed Settlement Class***

*admitted *pro hac vice*

**CERTIFICATE OF CONFERENCE**

I, the undersigned attorney, hereby certify to the Court that I have conferred with opposing counsel in an effort to resolve the issues contained in this motion without the necessity of Court intervention, and opposing counsel has indicated that they do not oppose this motion.

Certified on the 30 April 2026 by

*/s/Leigh S. Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion for Final Approval and Incorporated Memorandum of Law was electronically filed on April 30, 2026, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system.

*/s/Leigh S. Montgomery*